19 F.3d 22
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Gregory D. POPE, Plaintiff-Appellant,
v.
Gary MENDENHALL, Lieutenant and Captain Shaffer, Defendants-Appellees.
 No. 92-3880.
 United States Court of Appeals, Seventh Circuit.
 Argued Nov. 10, 1993.
Decided March 2, 1994.
 
 1
 Before MANION and KANNE, Circuit Judges, and WILL, District Judge*.
 
 ORDER
 
 2
 Gregory D. Pope, formerly an inmate at Western Illinois Correctional Center, appeals a grant of summary judgment in favor of two correctional officers, Lieutenant Gary Mendenhall and Placement Officer Stephen Shaffer. Pope sued Mendenhall and Shaffer under 42 U.S.C. Sec. 1983 for cruel and unusual punishment in violation of the Eighth Amendment, alleging that they failed to protect him from an assault by other inmates. On appeal, Pope contends, among other things, that the court below abused its discretion in refusing to allow additional time for discovery once Pope had retained counsel. We reverse the district court and remand to allow Pope additional time for discovery.
 
 I. Background
 
 3
 In February of 1991, Pope was incarcerated at Western Illinois Correctional Center in Mount Sterling, Illinois. Mendenhall and Shaffer were correctional officers at the same facility. Mendenhall was responsible for the supervision of all correctional officers and inmates assigned to the # 1 and # 2 Housing Units, and Shaffer functioned as the placement officer for the facility.
 
 
 4
 On February 6, 1991, at approximately 1:00 p.m., several members of a prison gang known as the Gangster Disciples confronted Pope and threatened to beat him severely unless he purchased certain items for them from the prison commissary. The gang members specifically told Pope that if he did not cooperate they would "bust his f* * *ing head." Soon thereafter, while out on a library pass, Pope went to the captain's office to report the threat and to request protection. He spoke with Lieutenant Mendenhall and told him of the threat. Pope requested to be moved and alleges that he told Mendenhall that he feared returning to his cell without an escort.
 
 
 5
 Mendenhall reported Pope's complaint to Shaffer and the 7 a.m.-3 p.m. shift commander (not named in this action). While Pope waited outside in the hall, Mendenhall and the others discussed the matter. They determined that Pope was not in immediate danger and that members of the 3 p.m.-11 p.m. shift would move Pope after the weekly transfer intake was completed. Mendenhall then informed Pope of their decision and instructed him to return to his cell and pack his personal belongings. Pope again asserts that he requested an escort back to his cell. He was not provided an escort, but nevertheless arrived back in his cell without incident. Mendenhall's shift ended at 3 p.m. and he left the prison grounds shortly thereafter.
 
 
 6
 Once back in his cell, Pope packed his belongings and waited for several hours. When he received no further instructions, he left his cell to go to the evening meal. When he arrived back after dinner, several of the gang members were waiting for him. They pushed him into his cell, struck his face with a heavy object, and knocked him unconscious. As a result, Pope sustained fractures to the bones around his left eye and underwent reconstructive surgery. He continues to suffer from severe headaches and episodes of double vision.
 
 
 7
 In response to the attack, Pope filed this Sec. 1983 action in district court against Mendenhall and Shaffer in their official and individual capacities.[1] Pope alleged that Mendenhall and Shaffer violated his Eighth Amendment right to be free from cruel and unusual punishment in addition to violating his Fifth and Fourteenth amendment rights to due process. Pope was granted leave to proceed in forma pauperis on February 10, 1992. Pope then petitioned for appointment of counsel on October 15, 1991 and again on April 24, 1992. The district court denied these requests and Pope proceeded with his action pro se. On June 24, 1992, United States Magistrate Charles Evans entered a scheduling order that included an August 24, 1992 deadline to complete discovery and a September 24, 1992 deadline to file dispositive motions. After the scheduling order was entered, and while Pope was incarcerated at Shawnee Correctional Center,[2] he sent a set of twenty-four interrogatories to the defendants. While awaiting the answers, Pope completed his prison sentence in Illinois and was transferred to Dodge Correctional Center in Waupun, Wisconsin. Defendants objected to Pope's interrogatories and Pope submitted an amended set of interrogatories on August 15, 1992 from prison in Wisconsin. This was, however, only nine days before the discovery deadline of August 24, 1992 and defendants apparently failed to answer the amended set before the cutoff date. In addition, Pope alleges that he was prevented from deposing Mendenhall and Shaffer because of his incarceration and his placement in an out of state facility.
 
 
 8
 Defendants filed their motion for summary judgment on August 25, 1992. After this motion was filed, Pope secured counsel and on September 4, 1992, filed a motion for extension of time in order to adequately complete discovery. Magistrate Evans denied Pope's motion for additional time to complete discovery but granted Pope and his counsel an additional twenty four days within which to prepare a response to the pending motion for summary judgment. Pope, through counsel, filed a response to the motion for summary judgment, but to no avail. The district court granted defendants' motion for summary judgment on November 2, 1992.
 
 
 9
 Pope raises several issues on appeal. We address only whether the magistrate abused his discretion in failing to grant additional time for discovery once Pope retained counsel.
 
 II. Analysis
 
 10
 District courts have broad discretion in matters related to discovery. Indianapolis Colts v. Mayor and City Council of Baltimore, 775 F.2d 177, 183 (7th Cir.1985). On review, courts of appeal will reverse the decision of a district court relating to discovery only upon a clear showing of abuse of discretion. Jurcev v. Central Community Hosp., 7 F.3d 618, 627 (7th Cir.1993); Dole v. Local 1942, IBEW, AFL-CIO, 870 F.2d 368, 371 (7th Cir.1989). We will not disturb a trial judge's exercise of discretion unless it is well established that the denial of the requested discovery would result in actual and substantial prejudice to the complaining litigant. Jurcev, 7 F.3d at 627; Otis Clapp & Son, Inc. v. Filmore Vitamin Co., 754 F.2d 738, 744 (7th Cir.1985). This case presents one of those rare occasions where the denial of additional discovery time amounts to an abuse of discretion.
 
 
 11
 The purpose of discovery under the Federal Rules of Civil Procedure is to provide a mechanism for making relevant information available to litigants. Fed.R.Civ.P. 26 advisory committee notes; Lozano v. Maryland Cas. Co., 850 F.2d 1470, 1473 (11th Cir.1988), cert. denied, 489 U.S. 1018 (1989). "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." Hickman v. Taylor, 329 U.S. 495, 507 (1947). By affording parties a reasonable opportunity to discover information that is relevant to their action, our rules seek to avoid surprise and the possible miscarriage of justice. Brown Badgett, Inc. v. Jennings, 842 F.2d 899, 902 (6th Cir.1988). For this reason we will reverse a decision of the trial court denying discovery where, in the totality of the circumstances, such decision results in fundamental unfairness to a litigant. Dabney v. Montgomery Ward & Co., Inc., 761 F.2d 494, 498, (8th Cir.1985), cert. denied, 474 U.S. 904 (1985); Voegeli v. Lewis, 568 F.2d 89, 96 (8th Cir.1977).
 
 
 12
 In order to demonstrate such fundamental unfairness, a litigant must show that he was prejudiced by the ruling of the trial court. Where, for example, the information sought is already available to the appellant or could have been obtained with reasonable care during the time allotted by the court, the denial of further discovery is not prejudicial. See, e.g., Rosario v. Livaditis, 963 F.2d 1013, 1019 (7th Cir.1992), cert. denied, 113 S.Ct. 972 (1993) (party who fails to pursue discovery in the face of court ordered cutoff cannot plead prejudice from his own inaction).[3] Or again, where the information sought will have no effect on the outcome of the case or is simply irrelevant to the issues presented, the denial of discovery is not prejudicial. See, e.g., Brown-Bey v. United States, 720 F.2d 467, 471 (7th Cir.1983) (no abuse to deny further discovery prior to entry of summary judgment where allegations in appellant's amended petition were without merit and no reason to believe that discovery would change this).[4] On the other hand, a ruling that denies a party an adequate opportunity to discover facts to oppose a motion for summary judgment is generally considered unreasonable if summary judgment is subsequently entered against that party.[5] See Williamson v. United States Dept. of Agriculture, 815 F.2d 368, 382 (5th Cir.1987); see also Pan-Islamic Trade Corp. v. Exxon Corp., 632 F.2d 539, 548 (5th Cir.1980), cert. denied, 454 U.S. 927 (1981) (grant of summary judgment improper where no adequate opportunity to discover facts to oppose motion). If discovery could uncover one or more substantial fact issues, the appellant should be entitled to reasonable time to do so. See Williamson, 815 F.2d at 373.
 
 
 13
 The record in this case, while sparse, indicates that Pope was not afforded an adequate opportunity to discover evidence in opposition to defendants' motion for summary judgment. Pope was incarcerated at Shawnee Correctional Center when he filed his complaint and was proceeding pro se after he was denied appointed counsel. Pope appears to have moved with reasonable diligence in the two months given for discovery. The defendants, however, objected to his first set of interrogatories. In the meantime, Pope was transferred to a prison in Wisconsin. From there he served revised interrogatories nine days before the discovery deadline. After an extended effort, he finally obtained private counsel, but by then discovery had closed.
 
 
 14
 It is clear to us that Pope made reasonable and timely efforts at discovery. He was, nevertheless, unable to obtain the information requested. Because of the time constraints, his out-of-state location and his incarceration, and his pro se status, Pope was restricted from obtaining meaningful access to witnesses and other evidence at the site of the attack. In addition, he alleges that only the defendants knew what transpired during the discussion in the captain's office at Western Illinois, and that only they could answer whether requests they received regarding protective transfers were routine as alleged.[6] Also due to these constraints, Pope claims that he was unable to depose defendants or otherwise gather information necessary to rebut defendants' "conclusory" affidavits submitted in support of their motion for summary judgment.
 
 
 15
 Without counsel or adequate time for discovery, Pope was unable to access this relevant information or investigate the actions or inaction of members of the 3 p.m.-11 p.m. shift actually responsible for his move. The combination of circumstances in this case deprived Pope of the opportunity to discover information that could have added significantly to his case or demonstrated a genuine issue of material fact. Such discovery could have also disclosed facts that may have eliminated otherwise viable claims. It was therefore an abuse of discretion to deny Pope additional time for discovery once Pope had retained his attorney. Cf. Palmer v. City of Decatur, Ill., 814 F.2d 426, 430 (7th Cir.1987) (abuse of discretion to dismiss prisoner pro se complaint, and then fail to reinstate claim upon retention of counsel, where there was no prior notice of dismissal and prisoner's failure to comply with order to secure counsel was less than three months old).
 
 III. Conclusion
 
 16
 For the foregoing reasons we reverse the judgment in favor of defendants Mendenhall and Shaffer and remand to allow Pope additional time to conduct discovery as the court deems appropriate.
 
 
 
 *
 Hon. Hubert L. Will, District Judge for the Northern District of Illinois, is sitting by designation
 
 
 [1]
 We note that a suit for money damages against a state official in his official capacity is a suit against the state and, as such, is barred by the Eleventh Amendment, unless the state consents. See Papasan v. Allain, 478 U.S. 265, 278 (1986); Santiago v. Lane, 894 F.2d 218, 220 n. 3 (7th Cir.1990); Shockley v. Jones, 823 F.2d 1068, 1070 (7th Cir.1987). Pope has not demonstrated and we are unaware of any provision where the State of Illinois has consented to suit under these circumstances. Therefore, to the extent that Pope's suit seeks money damages from Mendenhall and Shaffer in their official capacities, the suit is barred by the Constitution. In addition, the Supreme Court has held that neither states nor state officials acting in their official capacities are "persons" within the meaning of 42 U.S.C. Sec. 1983. Will v. Mich. Dept. of State Police, 491 U.S. 58, 64 (1989). Pope's suit against these defendants in their official capacities is thus barred by the U.S. Constitution and is not authorized by federal statute. Santiago, 894 F.2d at 220 n. 3
 
 
 [2]
 After the attack, Pope was transferred out of Western Illinois Correctional Center. He has since served his sentence in various penal facilities in Illinois, including Hill Correctional Center in Galesberg, Illinois, Shawnee Correctional Center in Vienna, Illinois, and Dixon Correctional Center in Dixon, Illinois. Pope was incarcerated at Shawnee Correctional Center when he initiated this suit
 
 
 [3]
 See also American Standard Inc. v. Pfizer Inc., 828 F.2d 734, 743 (Fed.Cir.1987) (need for discovery is enhanced when information is uniquely available from the party from whom it is sought while corollary is that need is diminished when the information is available elsewhere); Secord v. Cockburn, 747 F.Supp. 779, 786 (D.D.C.1990) (party who fails to pursue discovery for a year and a half in the face of a court ordered cutoff may not be heard to plead prejudice resulting from his own inaction); Stanley Works v. Haeger Potteries, Inc., 35 F.R.D. 551, 556 (N.D.Ill.1964) (allowing discovery tests on invention's utility only if discoverer unable to conduct such tests on its own)
 
 
 [4]
 See also Resolution Trust Corp. v. Sharif-Munir-Davidson Dev. Corp., 992 F.2d 1398, 1401 (5th Cir.1993) (preclusion of further discovery prior to grant of summary judgment not abuse where further discovery would not produce evidence creating genuine issue of material fact); Amey, Inc. v. Gulf Abstract & Title, Inc., 758 F.2d 1486, 1506 (11th Cir.1985), cert. denied, 475 U.S. 1107 (1986) (party does not have unlimited right to discovery prior to hearing on motion for summary judgment and, when record becomes clear enough to disclose that further discovery is not needed to develop significant aspects of case and such discovery is not likely to produce a genuine issue of material fact, discovery should be ended)
 
 
 [5]
 In addition, we note that Rule 56 governing summary judgments contemplates that parties will be afforded adequate time to conduct necessary discovery. Banco de Credito Indus. v. Tesoreria General, 990 F.2d 827, 838 (5th Cir.1993), cert. denied, 114 S.Ct. 877 (1994)
 
 
 [6]
 Where plaintiff's claim could only succeed upon a showing of actual knowledge on the part of supervisory personnel, as is generally the case with prisoner Sec. 1983 actions, and where facts solely in the defendants' control are at the heart of the necessary proof, a denial of discovery designed to reveal such information is an especially crippling blow and is an abuse of discretion, since it deprives plaintiff of an adequate opportunity to respond to a motion for summary judgment. See Villante v. Department of Corrections of City of New York, 786 F.2d 516, 521 (2nd Cir.1986)